## 23725. ORKIN EXTERMINATING COMPANY, INC. v. GILL.

ARGUED OCTOBER 10, 1966—DECIDED NOVEMBER 23, 1966.

*Irving K. Kaler, S. B. Lippitt,* for appellant.
*Robert J. Duffy, Emery L. Duffy,* for appellee.

ALMAND, Justice. Orkin Exterminating Company, Inc., filed its equitable petition in Chatham Superior Court seeking a temporary and permanent injunction against Rudolph W. Gill, a former employee. The petition alleged in substance the following facts: "[T]hat defendant, Rudolph W. Gill, entered into an employment contract with the present plaintiff, . . . dated December 31, 1964. [T]hat doing business in the territory and in every city described in contract attached as Exhibit (D) to this petition and expressly made a part hereof, and acquiring contracts and establishing good will, the plaintiff entered into a written contract of employment with the defendant . . . dated August 25, 1965. Plaintiff alleges that said contract dated August 25, 1965 was in full force and effect when the defendant . . . voluntarily resigned and tendered his resignation. That said defendant on November 27, 1965 further confirmed said voluntary resignation in writing. Upon receipt that the defendant . . . was given a separation notice dated November 23, 1965, confirming said voluntary resignation." All of the foregoing documents were attached to and made a part of the petition.

The portions of the contract dated August 25, 1965, which are material here are as follows: "Whereas, the employee has been previously and continuously employed by Orkin Extermi-

nating Company, Inc., (a Delaware Corporation) under the terms of an employment agreement dated December 31, 1964, and the employee has requested that said previous employment agreement be terminated in all particulars, except as to the provisions of Paragraph 8 and 9 of said employment agreement. . . . 1. The company hereby employs the employee as manager trainee for its Georgia District office and agrees to pay to the employee effective, July 1, 1965, a base salary of $650.00 per month. 8. The company and the employee agree that the company is engaged in the pest control, exterminating, fumigating and termite control business, and has built up and established a valuable and extensive trade in the following described territory: State of Georgia, Alabama and the State of South Carolina. . . . The employee hereby expressly covenants and agrees, which covenants and agreements are of the essence of this contract, that he will not, during the term of this agreement and for a period of two (2) years immediately following the termination of this agreement, for any reason whatsoever, directly or indirectly, for himself or on behalf of, or in conjunction with, any other person, persons, company, partnership or corporation" engage in certain described activities.

Section 10(a) of the 1965 contract provided that "the company and the employee agree that the restrictive covenants contained in Paragraph 8, or in any of its sub-paragraphs, and Paragraph 9, are severable and separate, and the unenforceability of any specific covenant therein shall not affect the validity of any other covenant set forth therein. These covenants on the part of the employee shall be construed as an agreement independent of any other provision in this agreement, and the existence of any claim or cause of action of the employee against the company whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the company of said covenants."

Plaintiff's petition further alleged that "the said former employee, Rudolph W. Gill, defendant aforesaid, is violating the terms of said contract, and is now working for a competitor of plaintiff, to wit: Eagle Exterminating Company, in Savan-

nah, Georgia, and is soliciting contracts and business for a competitor of plaintiff, as aforesaid, in direct violation of said contract, and is soliciting business and assisting others in competing in a business similar to that of plaintiff."

The defendant filed an answer in which he admitted that he entered into the contract dated August 25, 1965, but denied that he voluntarily resigned or that he was working for the Eagle Exterminating Company. By further answer, the defendant claimed that the plaintiff "willfully, intentionally, and wrongfully breached the contract . . . by terminating defendant's position as manager-trainee, all in violation of the terms of the contract" and thereby set up the defense of unclean hands on the plaintiff's part.

A hearing on the temporary injunction was had, at which time there was much testimony concerning the events leading up to the resignation of the defendant Gill. Under our decision here, we find it unnecessary to determine whether there was sufficient evidence before the court to support the order denying the injunction on the grounds of unclean hands on the part of the plaintiff, on which order the plaintiff has assigned error.

Unlike other cases of this nature, there are no questions before us concerning the reasonableness of the contract as to time and territory to which defendant is restricted from doing similar work as he had done for Orkin. There was undisputed evidence before the court that the defendant was in violation of the restrictive covenants in the contract in that he testified himself that he had taken employment with the Eagle Exterminating Company of Savannah, Georgia. It appears from the record that the trial judge's order denying the injunction was based on the fact that the plaintiff had not done equity towards the defendant under its agreements in the contract. The trial judge erred in this respect.

■ The clear language of the contract in Section 10(a) as set out above reads as follows: "These covenants [restrictive] on the part of the employee shall be construed as an agreement independent of any other provision in this agreement, and the existence of any claim or cause of action of the employee against the company whether predicated on this agreement or other-

*wise, shall not constitute a defense to the enforcement by the company of said covenants."* (Emphasis supplied.)

This case is controlled by the full-bench decision of this court in *Mansfield v. B. & W. Gas, Inc.,* 222 Ga. 259 (2) (149 SE2d 482), where this court said the following: "The appellees contend the provision is unenforceable since there is evidence showing the plaintiff did not do equity in that the defendant was fired without notice. In support of this contention they cite *Felton Beauty Supply Co. v. Levy,* 198 Ga. 383 (31 SE2d 651), which held that where the contract provided for notice to the employee before discharge, such provision must be complied with in order to enforce the negative restrictive covenant portion of that contract. The reasoning behind this rule was that the contract was entire, not severable, hence the breach of one condition released the binding effect of the other conditions. However, the court pointed out (p. 388): 'The character of the contract in such case (whether entire or severable) is determined by the intention of the parties.' In this case, from a reasonable construction of the evidence adduced by both sides it would appear that the parties mutually agreed, although inimically, to terminate their relationship. This is shown by the defendant Stringer's testimony that during a discussion with the plaintiff he complained about his working conditions and told the plaintiff that he could fire him if he so desired; whereupon, according to the defendant's testimony, the plaintiff accepted the invitation and terminated the relationship of employer and employee. Even if this were not so, here there is no question as to the intention of the parties, for the contract provided in unambiguous terms that the individual defendant, for a specified time and within a defined area, would not engage in the prohibited activity 'upon cancellation by either party for any reason . . . regardless of who was at fault and regardless of any claims that either party might have against the other. . .' The contract further recited that the restrictive covenant was intended to be several from the other provisions contained therein and 'the company is not to be barred from enforcing them by reason of any breach of any part of this agreement.' In such circumstances, whether the

employee voluntarily terminated the contract or was involuntarily discharged would be of no consequence, for the covenant restricting the right of the individual to work for a competitor would not be contingent on the manner of termination but 'regardless of who was at fault' would be valid and enforceable. See *Ogle v. Wright,* 187 Ga. 749 (2 SE2d 72); *Turner v. Robinson,* 214 Ga. 729 (107 SE2d 648); *Insurance Center v. Hamilton,* 218 Ga. 597, 603 (129 SE2d 801)."

■ Defendant (appellee here) contends that *Mansfield v. B. & W. Gas, Inc.,* 222 Ga. 259, supra, does not apply here because counsel for plaintiff made the following statement before the trial court: "We can just forget it for the time being. All right. Now, then, if this contract is legally terminated, I will say, it applies for two years after the termination of the contract." Defendant argues that this statement was a solemn admission in judicio and that "the intention of the parties is that the two-year restriction on Gill's activities after the termination of the contract, 'for any reason whatsoever' applies only when the employee is legally terminated."

The foregoing statement by plaintiff's counsel cannot be taken as a binding solemn admission in judicio in that the statute upon which defendant relies reads "solemn admission made in judicio, and other admissions upon which other parties have acted, either to their own injury or the benefit of the persons making the admissions" amount to estoppel. See *Code* § 38-114. Regarding this situation, this court said "if, in discussing a case, every suggestion or passing statement of each attorney touching what might be the effect of a deed, will, or other instrument would irrevocably fix that construction upon it, the courts might be much hampered in placing a proper judicial construction on the paper, and might sometimes be compelled to construe the same clause in very conflicting ways, none of which might be the correct way. The eloquence of the advocate may sometimes soar a little without being weighted down with the fear of estoppel. . . Nor does it appear that the company or its officers were misled by such statement or relied on it, or acted or failed to act on the faith of it." *Baker v. Davis,* 127 Ga. 649, 658 (11) (57 SE 62).

It has not been shown that the defendant relied on the alleged statement in court by plaintiff's counsel, and under such circumstances, there is no estoppel.

Therefore in the instant case, under the *Mansfield* decision, the trial judge was bound as a matter of law to grant the temporary injunction, and it was error not to do so.

*Judgment reversed. All the Justices concur.*